Chancellor Rutledge
delivered the decree of the Court.
The cage before us is upon the construction ofthe follow* jng clauses in the will of the testator, D. Heyward, who was the father both of Mrs. Brailsford, the complainant,
■“ I will to my son Thomas, and my brother-in-law, T. ' ' J . 7 J ' . Gignilliat, in trust for my wife during her natural life, m )jeu 0f jjer dower, the use of my house and lot in Charleston, with all the furniture, &c. belonging, tp the same; my house wenches, Rose and Precilla, &c. my plantation or, tract of land, called Sandy Hill, containing 764 acres, together with all the slaves, stock and plantation utensils, thereto belonging; and at her death, I give the plantation, with the negroes, stock, &c. thereon, to my youngest child, that shall attain to the age of 21 years, and his or her heirs forever; and my house and lot, slaves, &c. to the next youngest child, that shall attain to that age; and in case my youngest children die before they attain that age, if they should.leave lawful issue, they shall inherit; also one mulatto carpenter boy, named Will; and the above legacy to be clear of any incumbrance of my debts.”
“ I will to my sons, T. & W. in trust for the usé of my daughter Eliza, during her natural life, the following lands, slaves, stock, &c. (described in the will,) and appurtenances thereto belonging; and at her death, I give the land to the male heirs of her body, &c. and in case of no such heirs, then I give the lands and slaves to my youngest child, that shall attain to the age of 21 years.
The testator died some time after making his will, leaving five children in minority, viz.'James, Nathaniel, the complainant Maria, Elizabeth and Benjamin.
This widow died in 1788, Elizabeth died soon after him, (the testator) under age, and without issue. Benjamin is also dead, under age, and without issue, whereby the plantation, negroes, &c. devised to testator’s wife, for lif;, and the estate devised to Elizabeth, became the property of the complainant Maria, by the devise thereof in *31 the above recited clauses, she being the youngest child who has attained tbe age of 21 years.
For complainant, it was contended, that by virtue of the trust estate given to the defendant in the first instance for the life of the first taker, the estate limited to the child who should first take, should be construed a contingent remainder, and the trustee considered as holding the estate, together with the rents and profits, for the benefit of such child, until the estate vested: but that admitting such limitation not to be a contingent remainder, but an execu-tory devise, yet the complainant was entitled to the profits, it being evidently the intent of the testator, and might be collected from the will, that they should accumulate for' the benefit of the devisee, in whom the estate., should ultimately vest. On the other hand, it was insisted for defendant- that this Was an executory devise.- That the trustee had only an estate for the life of the first takers ; and upon their deaths (if it were not for the residuary clause) the profits of the real estate would descend to the heirs at law, until the contingency happened, and the profits of , the personal estate would accumulate and be an undisposed-part of the estate, tobe divided according to the statute.But that by virtue of the residuary clause, the residuary legatees must take the whole, it being therein given to them.- In support of thi3 doctrine, a, number of cases were cited by defendant’s council, which were not controverted t but in reply, it was insisted, that the intent of the testator must prevail.
To whom the profits of the estate belong, since the death of testator’s widow and his daughter Elizabeth, is the single question to be considered.— With regard to the defendant, it is of little consequence ; his interest is no way concerned in the determination; for if they do not belong to the complainant,.they will go to the residuary devisees and legatees, Nathaniel and James Heyward.
The governing rule of construction in the case of wills, is the intent of the testator; and that intent must be *32 collected from the whole will, exnñsceribus testamentó, so as to leave the mind quite satisfied about what the testator meant; and to construe conformably thereto, so far as it js p0ssible5 consistent with the rules of law. ' When sentences are doubtful or ambiguous the exposition must made according to the testator’s, intent, which lord, Coke calls the pole star, to guide judges in their determinations. In some cases equity will construe a will against express words, to make it take effect according to testator’s intent; and will reject inconsistent or contradictory words. How far a devisee or legatee, who is not entitled immediately to the estate, or thing devised, shall have the profits or interest in the mean time, depends upon particular circumstances. Lord Hardwicke observes, most' of them depend on the particular penning of wills; and hardly one case can be cited as a precedent for another. But if it be the case of a child to whom the testator gives the estate, the court will be astute to find out the testators intent, to give it effect.
This being premised, we shall proceed to consider the will of the testator. To shew that he meant to dispose of all his estate, he begins with declaring, that as to such worhUy goods as God had been pleased to put in his hands, &c. &c. he gave, devised and bequeathed to certain trustees for his wife’s life, and to other trustees for Elizabeth’s life, the estate in question; and at their deaths, (if Elizabeth should die under age, and without issue) the lands, slaves, &c. to his youngest child, that should attain the age of 21 years. The testator having amply pi-ovided for all his children in his will, but particularly his sons, and his two youngest children, who were the complainant, Maria and daughter Eliza, (for Benjamin was not then in esse) they appear, by the clauses under consideration, to have been the peculiar objects of his care, and to have been principally in his view; although by the singular manner of wording the first clause, Nathaniel has become entitled to the house and lot, &c.; and it is more than probable, testator did not contemplate that either James or Natha *33 niel would take any share of the estate devised in these clauses; for, after having made a disposition of a very large fortune among his children, lest he may have omitted something, which was not improbable, he inserts the clause, giving to his sons James and Nathaniel, the remainder of his estate, real and personal, to be divided between them. The profits of the estate, which he had specifically devised, could not be considered as any -part of the residue; for that can only apply to such estates as he had at the time of making his will, and were not therein particularly disposed of. The, whole property, lands, negroes, &c. being blended and united together, and given to the respective devisees under certain limitations, the profits as naturally follow and belong to such devisees as the shadow follows the substance. If however there remained on the mind a scintilla of doubt respecting the testators intent, the last clause would remove it compleatly; for where he appoints his executors, whom he also nominates guardians of his children, he gives them full power to act, do with and dispose of the yearly produce of his estate, as they should think proper for the benefit of his heirs above mentioned. To effectthe testator’s intentions, the word heirs must be construed children; for -in the legal sense of the word, a man’s eldest son is his heir, and it is evident he could not mean him ; neither could he mean his residuary legatees, because they were not his heirs. The heirs then to whom he refers, can be no other than his children, the devisees respectively named in his will, for whose respective benefit, the produce of the estate he had given to each of them shouldbe appropriated. Suppose the son Benjamin had lived to the age of 21 years, would it be contended that he would not have been entitled to the profits of these estates, which are now in dispute ? Surely not. Nothing is more evident, that the defendant did not view the question formerly in the light it is now contended, than the circumstance of his giving up the house and lot, &c. to complainant and his wife, on the death of testator’s widow; judging as he did very naturally and justly, that she having *34 an interest, although at that time contingent, would be m equity entitled to receive the profits, when the estate should vest, in most of the cases cited the testator disposed of a part of thé profits of the estates devised, particularly in Hopkins’s case» In the case before us, the testator *s sdenb as t0 tbe profits, but has devised the lands, slaves, &c. in general terms, which according to lord Colces notion of an <kc, would he sufficient to convey every ■ thing; and in the present case, we are of opinion, even without the aid of the last clause, would warrant the court in decreeing the profits of the estate to complainants. But that is so full, comprehensive and explicit, that we cannot hesitate to decree, and it is hereby ordered and decreed, that the defendant do account for the profits of the estates devised in the will from the death of the respective devisees, Mrs, Heyward and the testators daughter Elizabeth.
A petition was afterwards presented to the court for a re-. ^earing, and the same being granted, a re-hearing took place. and the cause wasagain fullyargued. Chancellor Rutledge afterwards delivered the opinion of the court as follows :
The defendant having applied for a re-hearing on the point respecting tbe right of complainants to call upon him for an account of the profits of the estate, to which they became entitled on the death of Benjamin Heyward, (son of the testator,) or that if held accountable, he might be allowed all advances made by him for Benjamin, over and above the income of Callewashee, (which was the estate devised absolutely to Benjamin,) to be deducted out of the income of the other estates ; that point not having been particularly urged at the former hearing; the court thought it reasonable and equitable to grant such re-hearing, (notwithstanding the decree to account,) in order to give the defendant an opportunity of making as full a de-fence on that point, as on those his counsel had made on the other questions in the cause. A re-hearing has accordingly been had, and the ingenuity of counsel has beer. *35 exhausted, to evince that Benjamin was entitled to the income of those estates, from the death of the respective de-., visees, or at any rate to so much as was necessary tor his maintenance over and above the income of the estate, cifically devised to. him. In support of their arguments, a variety of cases were adduced, which though very good law, were not applicable to the present case, because they were either cases of vested legacies, or where parents had given legacies to children, payable at 21, without making provision for their maintenance in the mean time. • There is indeed one case, that of Bourne and Tynte, where the whole interest of the legacy was given the legatee, though not a vested legacy. In that case, however, it was a bequest by the father for an unborn child, and he directed that SOI. part of the interest should be paid to his wife, for the education of such child. The lord chancellor allowed the whole ■ interest, and declared that it was never the intent of the testator that the defendant should have any benéfit of the legacy, if a child should be born; which had happened. In most of the cases which have been determined here, provision was made by the court for the education and maintenance of the legatees, out of the estates devised to them; because the parents had not the means of supporting and educating them suitable to the estate they would be entitled to. In the case of Woodber-ry, the father was altogether unable to do it. In the present case, the testator, it is true, has made no particular provision- for the maintenance of any of his children: he has, however,.made specific devises to each of them ; .out of the profits of which, he certainly intended they should be maintained. The very estate now in contest, being particularly devised to his wife and daughter during life, and that to the daughter and to her issue afterwards, shews most manifestly that he did not contemplate that the child or children, who might thereafter become entitled to the estate, on the devise over taking effect, should be maintained out of those funds, because it was altogether uncertain when the persons to whom the estates were immediately *36 devised, would die. To be sure, if there bad been no provision at all made for Benjamin, and if he had been left destitute, the court on the death of the first devisees would pave ma¿e a hard shift as the book expresses it, to make . 17 provision for him, and do what the father was bound to do? anc^ ought to have done, which was to provide necessaries for him; and therefore would have allowed somewhat out of the said estate for his maintenance. But because the court in such a case might have exercised their discretion, rather than that the child should have wanted bread, w.e do not think this case would warrant the exercise of such discretion, because the provision made for Benjamin by testator, (we must presume) he thought fully sufficient at that time ; and could only have intended the devise of the estates in question, as an additional bounty to the youngest child, whomsoever it might be that arrived to the age of 21, in the event of the death of the first devisees, (the latter of them without issue.) Upon the whole, we are of .opinion, that the decree is correct as it now stands. It will undoubtedly be a very hard case, if the defendant should eventually be injured ; and it is a misfortune which the court may lament, but have it not in their power to redress ; not being warranted therein by precedents ; and there being no intention of the testator .expressed in his will, sufficiently apparent to authorize the .court to decree either the profits, or a maintenance to Benjamin out of these .estates. As to the question whether Benjamin had not an absolute estate in the negroes specifically bequeathed, and- therefore, (as was suggested by .complainants counsel,) defendant might be made whole out of that property, we give no opinion, it having been mentioned that a suit is now depending in this court on that subject.
Holmes and Parker, for complainants.
PesaussuRE and Foed, for defendant.
The defendant afterwards accounted with the complainants conformably to the decree of the court before the master.
*37 The principal question before the master was, as to the allowance of interest on the annual balances in the hands of the executor, which the master reported to be due. Exception was taken to this part of the report, but was overruled.